

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHELLE VENTURA,

                    Plaintiff,

          v.                                    **DECISION AND ORDER**

SARAH M. ATTEA, JOHNSON & JOHNSON                1:12-CV-01177 EAW
FINANCE CORPORATION, AND JANSSEN
PHARAMACEUTICALS, INC.,

                    Defendants.

---

## INTRODUCTION

Plaintiff Michelle Ventura ("Plaintiff") has sued Defendants Sarah M. Attea ("Attea"), Johnson & Johnson Finance Corporation ("J&J Finance"), and Janssen Pharmaceuticals, Inc.  ("Janssen") (collectively "Defendants") as a result of a motor vehicle accident that occurred on December 27, 2011, in the Town of Amherst, approximately 150 feet west of the intersection of Hopkins Road and Sheridan Drive. Plaintiff was traveling in the left-hand turning lane when Attea, who was exiting the parking lot of a gas station, crossed traffic and collided with Plaintiff's vehicle.  Plaintiff suffered an injury to her left hand as a result of the collision.

Plaintiff has filed a motion for partial summary judgment on the issue of liability as to Attea and J&J Finance pursuant to Federal Rule of Civil Procedure 56.  (Dkt. 14).

- 1 -

Because there are no genuine disputes concerning the material facts as to the issue of liability, Plaintiff's motion is granted.

## BACKGROUND

The motor vehicle accident occurred on December 27, 2011, at approximately 8:35 a.m. on Sheridan Drive, approximately 150 feet west of its intersection with Hopkins Road in the Town of Amherst. (Dkt. 15 at ¶ 1; Dkt. 20 at ¶ 1). Plaintiff was headed eastbound on Sheridan Drive, traveling to a patient's home in Amherst in connection with her job as an infusion nurse. (Dkt. 15 at ¶¶ 2-3; Dkt. 20 at ¶¶ 2-3). Attea was driving a company car owned by J&J Finance that was provided to her through her employment with Janssen. (Dkt. 15 at ¶¶ 6, 11; Dkt. 20 at ¶¶ 6, 11). Attea was traveling to her home in Nashville, Tennessee, and had driven to a gas station located on the southwest corner of the intersection of Sheridan Drive and Hopkins Road. (Dkt. 15 at ¶¶ 7-8; Dkt. 20 at ¶¶ 7-8). The parties agree that Attea was operating the vehicle with the permission and consent of J&J Finance. (Dkt. 15 at ¶ 12; Dkt. 20 at ¶ 12).

At the time of the accident, Attea was on the phone with her stepmother. (Dkt. 15 at ¶ 14; Dkt. 20 at ¶ 14). Attea also had a small dog in the vehicle with her. (Dkt. 14 at ¶ 13; Dkt. 20 at ¶ 13). The weather was clear and the roads were dry, but there was a lot of traffic. (Dkt. 15 at ¶¶ 19-20; Dkt. 20 at ¶¶ 19-20).

Immediately prior to the collision, Plaintiff was traveling eastbound on Sheridan Drive with the intent to make a left-hand turn onto Hopkins Road, merging into the left-

hand turning lane where it began. (Dkt. 15 at ¶¶ 21-22; Dkt. 20 at ¶¶ 21-22). As Plaintiff approached the intersection, there were vehicles stopped at the red light in both lanes of eastbound traffic, but no vehicles ahead of her in the left-hand turning lane. (Dkt. 15 at ¶ 24; Dkt. 20 at ¶ 24). Plaintiff testified that she was traveling at the speed limit (45 miles per hour) immediately prior to and at the time of the accident. (Dkt. 15 at ¶ 26; Dkt. 20 at ¶ 26).

Before the accident, Attea was preparing to exit the gas station parking lot through its westerly exit. (Dkt. 15 at ¶ 27; Dkt. 20 at ¶ 27). She intended to make a left-hand turn onto Sheridan Drive across the eastbound lanes of traffic and into the westbound lanes. (Dkt. 15 at ¶ 28; Dkt. 20 at ¶ 28). Attea testified that she did not see any vehicle traffic coming from her left. (Dkt. 15 at ¶ 29; Dkt. 20 at ¶ 29). Attea's vehicle exited the parking lot, crossed the first two eastbound lanes of traffic, and collided with Plaintiff's vehicle in the left-hand turning lane; the point of impact was between the front left corner of Attea's vehicle and the right passenger panel of Plaintiff's vehicle. (Dkt. 15 at ¶¶ 32-33; Dkt. 20 at ¶¶ 32-33).

Plaintiff was taken to Millard Fillmore Suburban Hospital after the collision, where x-rays showed that she had fractured the second, third, and fourth metacarpals on her left hand. (Dkt. 15 at ¶ 41; Dkt. 20 at ¶ 41). Plaintiff had open reduction and internal fixation surgery on her left hand on the day of the collision. (Dkt. 15 at ¶ 42; Dkt. 20 at ¶ 42).

Plaintiff commenced this action in New York state court on June 27, 2012. (Dkt. 1 at ¶ 1).  Plaintiff filed an amended complaint on August 16, 2012 (*id.* at ¶ 3), and Defendants filed an answer to the amended complaint on August 22, 2012 (*id.* at ¶ 4). Plaintiff served a demand setting forth her claimed damages on November 21, 2012. (*Id.* at ¶ 6).  Defendants filed a notice of removal in this Court on the basis of diversity jurisdiction on November 27, 2012. (Dkt. 1).

Plaintiff filed the instant motion on September 26, 2013. (Dkt. 14).  Defendants filed their opposing papers on October 28, 2013 (Dkt. 18-21), and Plaintiff filed her reply on November 12, 2013 (Dkt. 26).  On January 14, 2014, the deadlines set forth in the scheduling order governing this case were stayed pending resolution of the motion. (Dkt. 28).  This case was transferred to the undersigned on January 27, 2015. (Dkt. 39).  Oral argument on the instant motion was held on April 20, 2015. (Dkt. 40).

## DISCUSSION

### I.     Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial."). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec.*, 475 U.S. at 586-87) (emphasis in original). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

Because this Court is sitting in diversity, the substantive law of New York State applies to Plaintiff's claims. *See Gasperini v. Ctr. for Humanities, Inc.*, 427 (1996) ("federal courts sitting in diversity apply state substantive law and federal procedural law"). To establish her entitlement to summary judgment on the issue of liability, Plaintiff must show that Attea was negligent in her use or operation of the motor vehicle. *Khan v. Associated Deliveries, Inc.*, No. 05 CV 2273 (SJ), 2007 WL 2246092, at *3 (E.D.N.Y. July 31, 2007). "Violation of a traffic law . . . creates a *prima facie* case of

negligence." *Id.* Plaintiff also bears the burden of proving that she suffered a "serious injury" as a result of the motor vehicle accident. *Mueller v. Seatainer Transp., Ltd.*, 816 F. Supp. 2d 206, 210 (W.D.N.Y. 2011). Under New York law, the owner of a vehicle is liable for injuries resulting from "negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner." N.Y. Veh. & Traf. Law § 388(1).

Once Plaintiff establishes negligence by Defendants, the burden shifts to Defendants to demonstrate a genuine issue of material fact as to Plaintiff's comparative negligence. *Garcia v. Verizon N.Y., Inc.*, 10 A.D.3d 339, 340 (1st Dep't 2004); *see also Allison v. Rite Aid Corp.*, 812 F. Supp. 2d 565, 569 (S.D.N.Y. 2011) ("[W]hile a plaintiff bears the burden of proving that the defendant's negligence was a proximate cause of the alleged harm, the defendant bears the burden of proving that the plaintiff's negligence contributed to the injuries the plaintiff sustained.") (citations omitted).

## II.   Plaintiff's Motion for Partial Summary Judgment

Defendants do not contest that Plaintiff suffered a serious injury. A "fracture" is considered a serious injury (N.Y. Ins. Law § 5102(d)), and it is undisputed that Plaintiff suffered fractures of the second, third, and fourth metacarpals on her left hand as a result of the collision. (Dkt. 15 at ¶ 41; Dkt. 20 at ¶ 41). Moreover, "[i]t is not the defendants' contention that Ms. Attea was completely free from negligence." (Dkt. 18 at ¶ 3; *see also*

Dkt. 19 at 7 ("The defendants are not seeking to dismiss the complaint, nor are the defendants arguing Ms. Attea was free from negligence."))

Instead, Defendants oppose Plaintiff's motion for partial summary judgment on the basis that "a jury could assign some degree of fault to the plaintiff. . . ." (Dkt. 18 at ¶ 3). Specifically, Defendants argue that Plaintiff may have failed to exercise due care when entering an intersection, as required by New York Vehicle and Traffic Law § 1180. (Dkt. 19 at 3-4). According to Defendants, there is a triable issue of fact regarding whether Plaintiff, despite traveling at the speed limit, was nonetheless traveling too fast under the circumstances present at the time of the accident.

There are numerous flaws in Defendants' argument.

To the extent that Defendants argue that Plaintiff's stated speed of 45 miles per hour was, in and of itself, negligent, their argument is incorrect as a matter of law. New York Vehicle and Traffic Law § 1180(e) provides that "[t]he driver of every vehicle shall . . . drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing. . . ." N.Y. Veh. & Traf. Law § 1180(e). New York courts have made it clear that § 1180(e) "does not mandate that a driver reduce his or her speed at every intersection, but only when warranted by the conditions presented." *Chietan v. Persaud*, 57 A.D.3d 471, 472 (2d Dep't 2008) (emphasis added). In other words, Plaintiff was not required to travel less than 45 miles per hour when approaching

the intersection of Sheridan Drive and Hopkins Road unless the then-present conditions required her to do so.

As discussed above, Defendants bear the burden of proving that Plaintiff was comparatively negligent, and thus bear the burden of showing that Plaintiff's speed was unreasonable under the conditions presented. *Allison*, 812 F. Supp. 2d at 569 ("As to the issue of . . . comparative negligence, defendants bear the burden of proof."). Defendants have failed to raise an issue of fact with respect to Plaintiff's alleged comparative negligence. First, Attea conceded that she did not see Plaintiff's vehicle prior to the collision. (Dkt. 26 at ¶ 18). New York State courts have found that such an admission renders an "allegation that [the opposing party] may have been negligently traveling at an excessive rate of speed . . . speculative and, thus, insufficient to defeat summary judgment." *Yelder v. Walters*, 64 A.D.3d 762, 765 (2d Dep't 2009) (collecting cases).

Second, the "evidence" relied upon by Defendants consists of an unsworn statement by non-party witness Shane Strawn ("Strawn") (specifically, a transcript of a recorded interview of Strawn taken after the accident) in which he states that Plaintiff was "moving pretty good" at the time of the accident and estimates that she was going "50, 55." (Dkt. 18-1 at 2). Strawn further stated in this transcript that he believed that if Plaintiff "wasn't going so fast, she could have stopped." (*Id.*). Defendants have offered no reason why this unsworn, hearsay statement would be admissible at trial, and it would therefore not be appropriate for the Court to consider it on this motion for summary

judgment. *See Dukes v. City of New York*, 879 F. Supp. 335, 343 (S.D.N.Y. 1995)

("[U]nsworn statements are not admissible to controvert a summary judgment motion.");

*see also Jacobs v. Schleicher*, 124 A.D.2d 785, 786 (2d Dep't 1986) (unsworn statement

of alleged eyewitness to accident "does not constitute evidentiary proof in admissible

form sufficient to raise a triable material issue of fact and overcome a motion for

summary judgment").

Moreover, at his deposition in this matter, Strawn stated that he was not able to

estimate Plaintiff's exact speed prior to the time of the collision and that he was merely

"guessing" when he previously stated that he thought Plaintiff was moving at a high rate

of speed. (Dkt. 14-16 at 30:18-31:22). Although Strawn went on to say that Plaintiff's

vehicle "seemed to be going faster than what [he] would . . . consider coming to a red

light," he also confirmed that he could not testify to a jury regarding an estimate of

Plaintiff's speed and that any statement by him regarding her speed would be "a guess."

(*Id.* at 32:5-13; 36:1-6). Given Strawn's sworn testimony that he would not be able to

provide a jury with an estimate of Plaintiff's speed, his previous unsworn statement fails

to demonstrate a genuine issue of material fact on the issue of whether Plaintiff's speed

was unreasonable under the circumstances.

Defendants also rely on Strawn's estimate that the left-hand turning lane on

Sheridan Drive was "35 feet long." (Dkt. 18 at ¶ 21). According to Defendants, this is

further evidence that Plaintiff was traveling at an improper rate of speed. However,

Plaintiff has submitted uncontroverted evidence that the left-hand turning lane is in fact 350 feet from beginning to end and that the distance between the western-most exit from the gas station and the intersection of Sheridan Drive and Hopkins Road is 123 feet and eight inches.  (Dkt. 26-1 at ¶¶ 7, 11).  Defendants also concede that the police accident report describes the accident as taking place 150 feet west of the Sheridan Drive/Hopkins Road intersection.  (Dkt. 20 at ¶ 1).  No reasonable jury could disregard this evidence in favor of Strawn's unsupported and demonstrably inaccurate estimate.  *See Kaltman-Glasel v. Dooley*, 228 F. Supp. 2d 101, 106 (D. Conn. 2002) (reasonable jury cannot rely on imprecise guess).

Defendants also argue that although both Strawn and Attea testified that the light at the intersection of Sheridan Drive and Hopkins Road was red prior to the accident (*see* Dkt. 14-16 at 32:5-13 (Plaintiff was "coming to a red light"); Dkt. 14-15 at 45:19-22 ("it was a red light")), it is nonetheless "more likely" that the "the light was, in fact, green and [Plaintiff] was attempting to complete her left-hand turn before the light changed."  (Dkt. 18 at ¶ 22).  This argument is nothing more than rank speculation and is insufficient to defeat a motion for summary judgment.  Defendants have not identified any evidence to support the conclusion that the light was green.

The cases relied upon by Defendants are distinguishable from the instant matter.  In *Strasburg v. Campbell*, 28 A.D.3d 1131 (4th Dep't 2006), the plaintiff admitted that he was making a turn into an intersection despite the presence of a vehicle obstructing his

ability to see. *Id.* at 1132. The court thus found that there was an issue of fact precluding summary judgment because "[a] driver cannot blindly and wantonly enter an intersection. . . ." *Id.* (quotation omitted). Here, Plaintiff was approaching but not entering an intersection, and there is no evidence that she attempted to turn despite not being able to see the intersection.

*Boston v. Durham*, 274 A.D. 2d 708 (3rd Dep't 2000) also involved a plaintiff who entered an intersection without reducing her speed "where her view of that intersection was obstructed by [a] vehicle." *Id.* at 710 (citation omitted). Again, Plaintiff in this case was not entering an intersection, and there is no evidence that her view of the intersection was obstructed.

Finally, in *Cooley v. Urban*, 1 A.D. 3d 900 (4th Dep't 2003), the defendant's motion for summary judgment was denied because there was evidence that the defendant had failed to slow down even after seeing the plaintiff's vehicle exit its travel lane and traverse a median before entering the defendant's lane of traffic. *Id.* at 900-01. Unlike in *Cooley*, there is no evidence that Plaintiff saw Attea's vehicle prior to the crash. It is well-established under New York law that "a driver who has the right-of-way is entitled to anticipate that the other motorist will obey the traffic law requiring him or her to yield." *Vainer v. DiSalvo*, 79 A.D.3d 1023, 1024 (2d Dep't 2010) (citations omitted). "Although a driver with a right-of-way also has a duty to use reasonable care to avoid a collision, it has been recognized that a driver with the right-of-way who has only seconds to react to a

vehicle which has failed to yield is not comparatively negligent for failing to avoid the collision." *Yelder v. Walters*, 64 A.D.3d 762, 764 (2d Dep't 2009) (citations omitted). This rule applies in this case. Plaintiff, who undisputedly had the right of way, was entitled to anticipate that other motorists, such as Attea, would obey the traffic laws requiring them to yield. Plaintiff did not see Attea's vehicle before the crash and therefore had no reason to anticipate that it might collide with her vehicle.

Plaintiff has cited a number of New York cases granting summary judgment under circumstances similar to this case. (*See* Dkt. 14-19 at 11-13). Defendants attempt to distinguish these cases on the basis that in this case, "the plaintiff was entering an intersection, and by statute, was required to reduce her speed." (Dkt. 19 at 8). This argument is incorrect both factually and legally. As discussed above, the evidence in this case shows that Plaintiff was approaching, but remained more than 100 feet from, the intersection of Sheridan Drive and Hopkins Road. Moreover, New York Vehicle and Traffic Law § 1180(e) "does not mandate that a driver reduce his or her speed at every intersection, but only when warranted by the conditions presented." *Chietan*, 57 A.D.3d at 472. As discussed at length above, it is Defendants' burden to show that Plaintiff's speed at the time of the accident was imprudent in light of the circumstances. They have failed to present evidence from which a reasonable jury could reach such a conclusion.

With respect to J&J Finance, Defendants do not dispute that pursuant to New York Vehicle and Traffic Law § 388, the owner of a vehicle is liable for injuries resulting from

negligent use or operation, as long as the negligent driver was operating the vehicle with the owner's consent.  *See* N.Y. Veh. & Traf. Law § 388; *Krynski v. Chase*, 707 F. Supp. 2d 318, 329 (E.D.N.Y. 2009).  Defendants concede that J&J Finance was the owner of the vehicle operated by Attea and that Attea was operating the vehicle with J&J Finance's permission and consent.  (Dkt. 15 at ¶¶ 6, 11, 12; Dkt. 20 at ¶¶ 6, 11, 12).

In short, Plaintiff has adequately demonstrated that no genuine issues of material fact exist regarding Attea and J&J Finance's liability with respect to Plaintiff's injuries resulting from the December 27, 2011, motor vehicle accident.  Defendants have failed to rebut this showing.  Partial summary judgment in favor of Plaintiff is warranted.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment as to liability by Attea and J&J Finance (Dkt. 14) is granted.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: May 1, 2015
       Rochester, New York